UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KAREN WORYTKO,

        Plaintiff,   **MEMORANDUM AND ORDER**
             03-CV-4767 (DRH) (ARL)
   - against -

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, POLICE OFFICERS,
DONNA M. AIELLO, TIMOTHY J. AIELLO,
CHRISTINE DEVINE, NICHOLAS HALL and
CAROLYN HALL,

        Defendants.
----------------------------------------------------------X
**A P P E A R A N C E S :**

**Karen Worytko, Plaintiff Pro Se**
Post Office Box 653
St. James, New York 11780

**For the County of Suffolk and the Suffolk County Police Department:**
**Suffolk County Attorney**
H. Lee Dennison Building
100 Veterans Memorial Highway
Post Office Box 6100
Hauppauge, New York 11788-0099
By: Arlene S. Zwilling, Assistant County Attorney

**For Defendants Donna and Timothy Aiello:**
**Baxter & Smith, P.C.**
125 Jericho Turnpike, Suite 302
Jericho, New York 11753


**HURLEY, Senior District Judge:**

   Presently before the Court is the motion by defendants Donna and Timothy J.

Aiello (the "Aiellos") for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] For the reasons that follow, the Aiellos' motion is granted in part and denied in part.

## BACKGROUND

The following facts are undisputed, unless noted. Plaintiff Karen Worytko ("Plaintiff") brought this action against defendants County of Suffolk, the Suffolk County Police Department, unidentified police officers, the Aiellos, Christine Devine, Nicholas Hall and Carolyn Hall asserting claims under 42 U.S.C. §§ 1983, 1985, and 1986, as well as under state law, for false arrest, false imprisonment and malicious prosecution; she also asserts a violation of her First Amendment rights. The Amended Complaint alleges that Plaintiff was arrested on three separate occasions, viz. June 20, 2002 (for criminal trespass in the fourth degree), August 5, 2002 (for criminal contempt in the second degree), and August 1, 2003 (for criminal contempt in the second degree), and that each arrest was premised upon fraudulent information provided by the Aiellos to the Suffolk County police, with whom they allegedly conspired. By Order dated May 25, 2005, this case was stayed on consent of all parties, including Plaintiff who was then represented by counsel, pending the disposition of Plaintiff's criminal cases.

On January 23, 2006, the Aiellos filed a letter informing the Court that Plaintiff had agreed to an adjournment in contemplation of dismissal ("ACD"), pursuant to New York Criminal Procedure Law § 170.55(2), with regard to all three criminal counts.[2] In their letter, the Aiellos contended, inter alia, that Plaintiff's acceptance of the ACDs barred her civil action and

---

[1] The Aiellos complied with Local Rule 56.2 by providing the requisite "Notice to Pro Se Litigant."

[2] An ACD is a conditional dismissal that becomes final if the accused meets certain criteria within a six-month period. N.Y. Crim. Proc. L. § 170.55(2) (McKinney 2007).

2

requested that Plaintiff voluntarily discontinue her case. They alternatively requested permission to file a motion for summary judgment. Thereafter, Plaintiff's counsel moved to withdraw, which application was granted on March 16, 2006.

Plaintiff subsequently moved for the appointment of counsel. On July 7, 2006, the Court denied Plaintiff's application. Following more correspondence by the parties, on August 17, 2006, the Court issued a briefing schedule with regard to the Aiellos' motion for summary judgment. The Court further ordered that discovery was to remain stayed pending resolution of the motion. The motion is now fully briefed and ready for the Court's review. For the reasons that follow, the motion is granted in part and denied in part, and the matter is referred to Magistrate Judge Arlene R. Lindsay for the issuance of a new discovery schedule.

## DISCUSSION

**I.** *Whether Plaintiff's Acceptance of an ACD Bars Her Claims*

The Aiellos argue that Plaintiff's acceptance of ACDs on all three criminal charges bars her claims for malicious prosecution, false arrest, false imprisonment, and for violations of the First Amendment. For the reasons that follow, the Court finds that Plaintiff's acceptance of the ACDs bars her claims for malicious prosecution only.

**A.** *Plaintiff's Malicious Prosecution Claims are Dismissed*

Under both 42 U.S.C. § 1983 and New York law, a plaintiff asserting a claim for malicious prosecution must demonstrate that her criminal case was terminated in her favor. *See Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Here, Plaintiff's criminal cases were resolved when the charges against her were adjourned in contemplation of dismissal. An ACD is not a favorable termination because it

leaves open the question of the accused's guilt and thus precludes a claim of malicious prosecution. *See Fulton*, 289 F.3d at 196; *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980); *Hollender v. Trump Vill. Coop., Inc.*, 58 N.Y.2d 420, 423, 426 (1983). Accordingly, Plaintiff's malicious prosecution claims, under both state and federal law, are dismissed.[3]

### B.   *Plaintiff's False Arrest/Imprisonment Claims Are Not Barred*[4]

Under New York law, a favorable termination is not an element of a claim for false arrest. *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (citing *Broughton v. State*, 37 N.Y.2d 451, 457 (1975)). Accordingly, Plaintiff's acceptance of the ACDs does not bar her from bringing a state law claim for false arrest. *See Hollander*, 58 N.Y.2d at 423, 425.

Turning to Plaintiff's § 1983 claim, while there is authority, as the Aiellos assert, for the proposition that the absence of a favorable termination prohibits a claim for false arrest, *see Johnson v. Bax*, 63 F.3d 154 (2d Cir. 1995) and *Roesch v. Otarola*, 980 F.2d 850 (2d Cir. 1992), more recent case law concludes that a favorable termination is not a required element of a false arrest claim.

In *Roesch*, the Second Circuit held that a plaintiff's § 1983 false arrest claim was

---

[3] Plaintiff conclusorily asserts that her attorney coerced her into accepting the ACDs. Plaintiff alleges no facts, however, of what, if anything, she did to vacate the ACDs and reactivate the underlying criminal proceedings. Not surprisingly, she has provided no authority for the proposition that an ACD does not bar a malicious prosecution claim if the former criminal defendant asserts that her consent to the disposition was coerced. The Court believes that the situation is otherwise and, accordingly, concludes that the subject assertion is irrelevant for present purposes.

[4] "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." *Golden v. City of N.Y.*, 418 F. Supp. 2d 226, 232 (E.D.N.Y. 2006) (citation and internal quotations marks omitted). Accordingly, Plaintiff's claims for false arrest and false imprisonment will be analyzed in tandem.

4

barred because the criminal proceedings against the plaintiff had terminated pursuant to Connecticut's accelerated pretrial rehabilitation program, which was "in all material respects the same as [an ACD under New York law]." 980 F.2d at 852; *id.* at 853. The court reasoned:

> Having decided that the criminal charge at issue in the state court was not disposed of in a manner favorable to the [appellant], thereby precluding the [appellant] from pressing his malicious prosecution claim in this section 1983 action, it would be anomalous to allow the [appellant] to challenge here the existence of probable cause for his arrest and incarceration for that *same* criminal charge. The policy considerations that motivated the Court in *Singleton* [to bar a malicious prosecution claim based on an ACD] are equally appropriate in the context of a section 1983 claim sounding in false imprisonment or false arrest.

*Id.* at 853-54 (citation and internal quotation marks omitted).

In a later decision, *Weyant*, the Second Circuit distinguished *Roesch*, noting that it had "several difficulties with [the *Roesch*] ruling." 101 F.3d at 853. In *Weyant*, one of the plaintiffs was arrested for disorderly conduct and resisting arrest. *Id.* at 850. After a jury trial in Town Court, he was found not guilty of disorderly conduct but guilty of resisting arrest. *Id.* On appeal, plaintiff's judgment of conviction was reversed on the following ground:

> The information charging [plaintiff] with resisting arrest fails to set forth non-hearsay allegations establishing, if true, that [plaintiff's] arrest was authorized, and was therefore insufficient on its face.

*Id.* (citation and quotation marks omitted).

Plaintiff later brought suit in federal court, asserting, inter alia, a claim for false arrest under § 1983. *Id.* The district court dismissed this claim, finding that the original guilty verdict supported a finding of probable cause, notwithstanding that the verdict had thereafter been voided because the Town Court lacked jurisdiction due to the insufficiency of the information. *Id.* at 850-51. Because probable cause to arrest is a complete defense to a claim of

5

false arrest, the district court dismissed plaintiff's false arrest claim. Relying on *Roesch*, the court stated that "a person who thinks probable cause was lacking must pursue the case to an acquittal or unqualified dismissal in order to preserve such a claim [for false arrest]." *Id.* at 853.

In reversing the lower court, the Second Circuit distinguished *Roesch* on two grounds. First, the Circuit noted that *Roesch* involved events that occurred in Connecticut while *Weyant* involved events that occurred in New York. 101 F.3d at 853. This was significant because "under New York law, while the favorable termination of judicial proceedings is an element of a claim for malicious prosecution, . . . it is not an element of a claim for false arrest." *Id.* (citing *Broughton*, 37 N.Y.2d at 456). Connecticut law in this regard, however, was unsettled as Connecticut's highest court had not yet addressed "the issue of favorable termination in the context of a claim for false arrest where there has been no determination as to guilt." *Id.*

Second, the prosecution in the *Roesch* case was terminated pursuant to Connecticut's accelerated pretrial rehabilitation statute, which as noted above, is the same as an ACD under New York law. *Id.* In *Weyant*, however, because the information filed by the police officer was insufficient to give the Town Court jurisdiction, "there was effectively no prosecution at all." *Id.* at 854. Thus, the Circuit concluded as follows:

> In sum, the ruling in *Roesch* is no impediment to our conclusion here that a person who asserts that he has been arrested without a warrant and without probable cause-a claim that does not seek to cast doubt upon judicial proceedings and is ripe upon arrest-need not insist that a prosecution be brought against him [and result in an acquittal or unqualified dismissal] in order that he be allowed to pursue a claim for false arrest.

*Id.* at 854.

The Court's independent research reveals that since *Weyant*, most of the lower

6

courts in New York that have addressed this issue have found that while an ACD does bar a malicious prosecution claim, it does not bar a false arrest claim pursuant to § 1983. *See, e.g.*, *Cumberbatch v. Port Auth. of N.Y. and N.J.*, No. 03 Civ. 749, 2006 WL 3543670, at *10 and n.17 (S.D.N.Y. Dec. 5, 2006) ("To the extent that some courts in this district have relied on *Roesch* to bar false arrest claims on the basis of an ACD, those decisions do not reference, and are squarely at odds with, *Weyant*.") (citations omitted); *Wedderburn v. City of N.Y.*, No. 00 CIV 4027, 2000 WL 1877100, at *1 (S.D.N.Y. Dec. 27, 2000) (applying *Weyant* and holding that plaintiff's § 1983 false arrest claim was not barred based upon plaintiff's acceptance of ACD).[5] Although the Court recognizes that *Weyant* is distinguishable from the instant case in that the present matter, unlike *Weyant*, involves the termination of criminal proceedings by way of ACD, this case is similar to *Weyant* in that it involves incidents occurring in New York. This fact, together with the broad holding in *Weyant,* constrains this Court to find that Plaintiff's acceptance of the ACDs does not bar her claim for false arrest under § 1983. The Aiellos' motion for summary judgment on Plaintiff's false arrest claims is denied.

**C.** *Plaintiff's First Amendment Claims are Not Barred*

Plaintiff alleges that her First Amendment rights were violated because she was arrested on August 1, 2003 in retaliation for: (1) filing a complaint against the Aiellos' son with the Suffolk County police for allegedly vandalizing her husband's car; and (2) for the "pending lawsuit," presumably, Plaintiff's earlier filed lawsuit against the Aiellos, Suffolk County, the

---

[5] The Aiellos also argue that even if Plaintiff's false arrest claims are not barred by her acceptance of the ACDs the Court should still dismiss her claims because Plaintiff has failed to come forward with any evidence in support thereof. At this early juncture of the litigation, where discovery is not yet complete, the Court declines to do so.

Suffolk County Police Department, and certain Suffolk County police officers, *see* case no. 02 CV 2233. (*See* Am. Comp. at 2 § 4.) The Aiellos contend that Plaintiff's First Amendment claims must be dismissed because they are barred by Plaintiff's acceptance of the ACDs. The Court disagrees.

To establish a First Amendment retaliation claim, a plaintiff must prove that: "(1) [s]he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [her] First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). In *Johnson*, the Second Circuit held that the plaintiff's acceptance of an ACD did not bar his First Amendment claims because "the favorable termination of a criminal proceeding is not an essential element of an *independent* First Amendment claim." 63 F.3d at 159 (emphasis added). In that case, the plaintiff was arrested for obstruction of government administration and disorderly conduct for carrying a sign in a prohibited location he wanted President Clinton to see during a 1993 visit to New York City. *Id.* at 156. Because "it [was] clear that [the plaintiff] ha[d] First Amendment claims independent of his claims for false arrest and false imprisonment," his claims were not barred by virtue of his ACD. *Id.* at 159-60. In other words, plaintiff's First Amendment claims did not "depend upon the disposition of his claims for false arrest and false imprisonment." *Id.* at 157.

The Aiellos argue that *Johnson* is inapplicable to the present case because here, "[P]laintiff's speech is necessarily intertwined or essentially the same speech which led to the prosecution." (Aiellos' Mem. at unnumbered page 3.) Thus, they argue, Plaintiff's First Amendment claim is not independent of her false arrest and false imprisonment claims; rather,

8

the speech upon which Plaintiff bases her First Amendment claim, i.e., her complaints regarding the Aiellos' son, formed the basis for her August 2003 arrest. (*See* Aiellos' Reply at unnumbered page 3 (citing *Dietz v. Damas*, 948 F. Supp. 198, 212 (E.D.N.Y. 1996) (dismissing First Amendment claim where, inter alia, claim was "inextricably intertwined with the determination of the reasonableness of" the defendants' actions)).) According to the Aiellos, then, dismissal of the false arrest and false imprisonment claims mandates dismissal of Plaintiff's First Amendment claims. The problem with this logic is twofold.

First, the Court did not dismiss Plaintiff's claims for false arrest and false imprisonment. Accordingly, no determination has been made regarding the reasonableness of the police officers' actions. Next, as outlined above, Plaintiff's First Amendment claim is not predicated solely upon her complaint to the police regarding the Aiellos' son. Plaintiff also claims that she was arrested in retaliation for filing a lawsuit against the present defendants. This claim is independent of her false arrest and false imprisonment claims and therefore requires assessment on its merits irrespective of the dismissal of the claims for false arrest and false imprisonment. *See Shaw v. McCusker*, 14 F. Supp. 2d 227, 231 (D. Conn. 1998) ("The *Johnson* case stands for the proposition that, although the plaintiff's acceptance of an adjournment in contemplation of dismissal barred his claims for false imprisonment and false arrest, it did not prohibit him from presenting an *independent* First Amendment claim involving freedom of speech.") (emphasis added). Accordingly, on the arguments presented, the Court declines to dismiss Plaintiff's First Amendment claims.

## II. *Plaintiff's Claims for Intentional Infliction of Emotional Distress are Dismissed In Part*

Although not pled as a distinct cause of action, the Aiellos contend that "to the extent that the claim for intentional infliction of emotional distress can be perceived from the [Amended] [C]omplaint, this claim must also be dismissed." (The Aiellos' Mem. at unnumbered page 4.) Plaintiff's pleading lists "intentional and negligent infliction of emotional distress" as an item of damage and alleges that she suffered mental anguish and emotional pain due to the three arrests and "their aftermath." (Am. Compl. at 3 ¶ 4.) In addition, in her opposition papers to the instant motion, Plaintiff notes "[t]he psychological trauma of the continuing arrests/harassment" (Pl.'s Opp'n at unnumbered page 3), and makes various references throughout her papers to the Aiellos threatening to kill her and to killing her pets.[6]

In *Fischer v. Maloney*, 43 N.Y.2d 553 (1978), the New York Court of Appeals suggested in dictum that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory: "[I]t may be questioned whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability." *Id.* at 557-58. Relying on *Fischer*, the Aiellos argue that Plaintiff's claims for intentional infliction of emotional distress should be dismissed because "the conduct complained of by [P]laintiff . . . is addressed by her claims for false imprisonment, false a[rrest] [and] malicious prosecution."

---

[6] Plaintiff also refers to "[g]etting the hell beat out of [her] in [her] home in front of [her] sons." (Pl.'s Opp'n at unnumbered page 2.) As there is no mention of these allegations in her Amended Complaint, the Court presumes that Plaintiff is referring to her claims of excessive force which were litigated in her other action against the same defendants -- case no. 02 CV 2233 -- which was tried before this Court in December 2005.

(Aiellos' Reply at unnumbered page 5.)

The *Fischer* dictum has been consistently applied by lower state courts and federal courts applying New York law. *See, e.g.*, *Roper v. Hynes*, No. 05 CIV. 7664, 2006 WL 2773032, at *13 (S.D.N.Y. Sept. 27, 2006) (dismissing claim for intentional infliction of emotional distress which fell within scope of other torts); *Hansel v. Sheridan*, 991 F. Supp. 69, 75 (N.D.N.Y. 1998) (dismissing claim for intentional infliction of emotional distress because "the conduct complained of is squarely addressed by plaintiff's claims for malicious prosecution and assault and battery"); *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 682 N.Y.S.2d 167, 169 (1st Dep't 1998) ("[I]ntentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort. . . . [Such a claim is p]recluded where the offending conduct is embraced by a traditional tort remedy."); *Butler v. Delaware Otsego Corp.*, 610 N.Y.S.2d 664, 665-66 (3d Dep't 1994) ("It is well settled that a cause of action for intentional infliction of emotional distress should not be entertained where the conduct complained of falls well within the ambit of other traditional tort liability.") (citations and internal quotation marks omitted).

The Second Circuit has discussed, but has not resolved, whether a claim for intentional infliction of emotional distress is truly barred as a matter of law when the underlying conduct is actionable under another theory of tort liability. *Bender v. City of New York*, 78 F.3d 787, 791-92 (2d Cir. 1996) (finding it unnecessary to resolve this state law issue); *see also Gonzalez v. Bratton*, 48 Fed. Appx. 363, 365 (2d Cir. 2002) ("Assuming *arguendo* that duplicative claims are barred, plaintiff's intentional infliction of emotional distress claim is, quite simply, not duplicative of her false imprisonment claim and her claim is therefore not barred.") (unpublished opinion).

Based on the foregoing, to the extent Plaintiff contends that she suffered emotional distress arising out of the three arrests and "their aftermath," her complaints are encompassed in her false arrest claims and will be dismissed. However, to the extent Plaintiff's intentional infliction of emotional distress claim is premised upon other conduct, such as threats or acts carried out by the Aiellos outside of the arrests, her claim will not be dismissed at this early stage in the case.

## CONCLUSION

For all of the above reasons, the Aiellos' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent the following claims are dismissed: (1) Plaintiff's claims for malicious prosecution under both state and federal law; and (2) Plaintiff's claims for intentional infliction of emotional distress insofar as they are embraced within her other state law claims. The stay of discovery is lifted and this matter is hereby referred to Magistrate Judge Arlene R. Lindsay for the issuance of a new discovery schedule.

**SO ORDERED.**

Dated: June 28, 2007
Central Islip, New York

/s_____
Denis R. Hurley,
United States District Judge